in numbers 22-1242 and 22-2550, United States v. Avenatti, Ms. Hutchinson. Thank you, your honor. May it please the court, Kendra Hutchinson of Federal Defenders of New York for the appellant here, Mr. Avenatti. With the court's permission, I'd like to go a little bit out of order in this case and begin with the Allen charge issue and then move on to the professional duties charge issue. This was an unusual case with two deadlock notes, two Allen charges, and a majority of jurors piling onto a holdout in a note. There can be no doubt that under this context, under all these circumstances and from the perspective of that holdout juror, that the second Allen charge in this case, which singled her out and directed the other jurors to tell on her, in essence, tended to coerce her into a verdict. So to sort of set the stage here in terms of this course of the- It singled her out. It didn't mention her by name. It didn't single out any particular person. It just said everybody should not be swayed by sympathy and should make decisions based on the evidence, right? It was phrased in terms of all the jurors' duties. Yeah, that's absolutely right, your honor, that most of this note was phrased in terms of all the jurors' duties. In a normal Allen charge, you can single out the holdouts, right? You can say, if you're in the minority, you might consider whether the majority is right. Isn't that, and we think that that's okay, isn't that more of a singling out of jurors? No, that's right. The traditional Allen charge keeps getting affirmed in this court and has not been overturned, your honor. But I'd argue that in some ways, this charge is even more prejudicial then or more singling out than a traditional Allen charge. The note that had preceded this and that this was in response to had complained very bitterly about this holdout juror, your honor, and had said this stuff about her having sympathy or emotions. And this note in several places just referenced the sympathy and emotions, but I think the most important part of it is the very last line that the court added over a vigorous objection. If at any point in your deliberations, anyone on the jury is refusing to deliberate in accordance with my instructions, you are free to send us another note. Judge, I think it's important to note here that the jury note that they had sent out, they had not said that she had been refusing to deliberate yet. So in fact, again, this note had been acrimonious and had said that, you know, had underlined the pleas, et cetera, but at this point, there was no indication that this juror was refusing to deliberate. Doesn't it say, he or she is refusing to look at evidence and is acting on a feeling? Judge, this court has defined the duty to deliberate, and I'm specifically speaking of Smalls v. Bautista and the Baker case, which although it's a misconduct case, you know, it contains language relevant to this. The duty to deliberate is the duty to listen to others' views. And in Baker, the problem in Baker was not that the juror there was not, you know, not looking at evidence. In fact, the court explicitly said the problem with this juror is not the failure to look at evidence. It was that the juror was not listening to views and was refusing to deliberate. And indeed, there had been an inquiry that established that, you know, beyond all doubt. That was not, there was no inquiry here. Judge Furman twice- Do you think the inquiry would have been less heavy-handed if he made an inquiry about the jurors and whether they're deliberating like the court did in Baker? I don't think, Your Honor, I think Judge Furman made exactly the right call here. I mean, the government pressed their request twice requesting a Baker inquiry. And Judge Furman kept pointing out, I don't think this is the same as Baker. This is not, you know, this is not three notes that come out. These are different notes. And- So the note says, we have one juror who's refusing to look at evidence and is acting on a feeling. We need assistance on moving forward. She does not believe she needs to prove her side using evidence and refuses to show us how she has come to her conclusion. I mean, is that not a description of someone who's refusing to deliberate with the other jurors? Judge, this court has held numerous times that a juror has no duty or obligation to prove her side to the other jurors. They have no duty to convince other jurors. So in fact, what these jurors were asking for was not her obligation under the duty to deliberate at all. She did not, you know, as Mr. Avenatti argued below, you know, vigorously, this was a juror who, you know, apparently there was a deadlock from the first, you know, from the very beginning. There was at least one holdout juror at that point or at least, you know, one lack of consensus. The jurors deliberated in good faith throughout the, you know, following the modified Allen charge. They requested, you know, a recharging, they requested testimony, and they deliberated in good faith. And then, and there was no complaints about anybody until this. And so, you know, this cannot be construed as a refusal to deliberate. This court has required much higher proof of it. And, you know, in the Thomas Baker, you know, suite of cases, you know, the pair of cases really show that. I mean, this honor, this court has really required a much higher threshold. And I think it's also important. Okay. So even if you're understanding it not as a refusal to deliberate, if in fact the district court says, you know, you should look at the evidence and make a decision and you should deliberate with your other jurors, and if you have an honest conviction based on the evidence at trial, you should not surrender those convictions solely because of the opinions of your fellow jurors, what's the harm from that, even if you think it wasn't necessary? You know, the real problem here is the singling out and this intermingling in this charge here, given the context, given this three-day context of deliberations and what the jurors had, you know, this bitter complaint about the other juror, this had to be a very uncomfortable moment for this juror. And remember, this is evaluated in the context of the minority juror. So her fellow jurors, she knew they had written a note about her. This note was read in public, you know, before a packed courtroom in a high-profile case that had to have been a terrible, terrible moment. And the note directed the 11 other jurors to write back if they basically believed that her conclusion, if they sort of didn't like her conclusion still. And, you know, in the context, this is a very unusual case, Your Honor. But the jury continued to deliberate, right? Like, they went back, they deliberated over lunch, they didn't return a verdict until 2.30 in the afternoon. So it's not as if the person was just intimidated into surrendering, right? Yeah. Yeah, well, and it's important to note that this was during the pandemic when there was a lot of precautions. And so the jurors were explicitly not required because of social, not allowed because of social distancing to deliberate during lunch. So this is a significantly shorter period of time than the 11, I guess, 11.30 to 2.30 here because there was, jurors weren't allowed to deliberate and talk during lunch. So you're saying they received the instruction at 11.55, there was, let's say, lunch was an hour and then they deliberated for another hour and a half. Yeah, I mean, we can, that's certainly fine. And this court has found longer periods of time to be, you know, to indicate coercion. I mean, you know, obviously no one factor is dispositive, Your Honor, because, you know, the prosecution, the government, you know, points out that the court did, in one instance, you know, discuss not abandoning conscientious, you know, the jurors not abandoning a conscientious  And that's, you know, I understand that in the past this court has, you know, blessed the absence of that. But this is a very particular note in a very particular context with, you know, complaints from jurors who apparently really did not like what this, this juror's conclusion. So in your view, what should the district court have done? He could only have granted a mistrial at this moment, Your Honor. That had no other choice. Well, I mean, you know, in the absence of the mistrial, Mr. Avenatti proposed other responses that would not have, you know, impinged into this Allen charge area, right? This dynamite area, as it is known, right? The, you know, Mr. Avenatti proposed that. And that would have been sort of the minimum the judge could have done. But I think at this point, when you have such an acrimonious note like this and such, you know, and such sort of shaming, like a public shaming of a juror, really, could only have granted a mistrial. And I just want to... But you're saying if the, if the note from the juror, jury had said, we have one juror, instead of saying refusing to look at evidence that is acting on a feeling, if it had said, we have one juror who's refusing to deliberate with us, please help us move forward and so on, then the Allen charge would have been appropriate? Act, well, you know, I think refusing to deliberate would have triggered something. Potentially... Well, because your objection was that this note that came from the jury does not indicate a refusal to deliberate, which would allow the Allen charge. So if it just said the juror is refusing to engage with us in a discussion and so is refusing to deliberate, please help us move forward, then the Allen charge would be appropriate. Actually, I think if it said refusal to deliberate, we might be closer to a misconduct case, Your Honor, that might implicate some of the, the Baker inquiry matters. You know, I think that's what that, that, you know, and if I misspoke before, I apologize, Your Honor. It's that, you know, if, if this note had said she's, you know, in Baker, the note said the juror is sitting there with her arms crossed and she's not answering our questions. I mean, that indicates somebody who's just absolutely stonewalling, you know, and, and then when there was an actual inquiry on the record of the foreperson and various jurors and even the juror herself, the court adduced from all of them that indeed she was refusing, deliberately refusing to participate in deliberations and indeed had refused for, for since half an hour. And so. Okay. So if the, if the, if the note had said we have one juror who is, what you just said, refusing to engage in deliberation, please help us move forward, then the Allen charge would have been appropriate. I think this court, no, I think this court probably would have, this court has required that the judge has an obligation to inquire at that point. So I don't think that an Allen charge would be appropriate, but that's not this case, right? That's not this case. But I'm just trying to get at the difference between when it would be appropriate to give an Allen charge and what you think is so different about this note. And so that's why I keep asking what it would have to say in order for the Allen charge to be appropriate. Okay. Thank you, Judge, for clarifying that. So I think a note like the first jury note, we are unable to come to a consensus. That is a classic deadlock note. And all of the parties assented, including Mr. Avenatti, to a modified Allen charge in response to that. I think that that was, you know, everybody got it right there, Your Honor. That, you know, the prosecution, Mr. Avenatti, and Judge Furman, like everybody got that right. So this note displaying this, this, you know, really calling a juror out and complaining about her, followed by a response in the context of this case in which it's clear they've been deliberating, they've been requesting evidence, she's come to a conclusion. So a response from the judge that, you know, singles out this sympathy or emotion, and then if at any point in your deliberations anyone on the jury is refusing to deliberate in accordance with my instructions, you are free to send us another note. I mean, that has got to be very embarrassing, Your Honor. And, you know, for a juror in the minority, which is how this is evaluated, going back to the jury room, I, you know. Okay. So you're saying that any note that singles out a particular juror, even if it is about a refusal to deliberate, you'd have to declare a mistrial at that point because there isn't a charge that could encourage them to go back and deliberate? I don't know. I mean, you know, Your Honor, again, this is not a refusal to deliberate case, and so I can't speak to that. Right. But I just said, if they said it's a refusal to deliberate, would the Allen charge be appropriate? And you said no. So it seems like you're saying whenever there's any note singling out a juror for anything, you have to declare a mistrial at that point. I think under all the circumstances of this case, you'd have to. I really do, Your Honor. Or, at a very minimum, give the instructions that Mr. Avenatti requested, which were taken directly from— But if I understand the limitations of your arguments, when would you not have to declare a mistrial if the jury was upset about somebody refusing to deliberate? So, you know, if the jury gave—you know, this court has required credible allegations. That's the standard from Baker and Thomas. So if there are credible allegations of refusal to deliberate, the court has an obligation to inquire. I think that in many contexts, Your Honor, an Allen charge in response to that would not be appropriate. We didn't cite this in our briefing, but, you know, there are cases from this court—well, I shouldn't even bring them up, but yes. The court has an obligation to inquire in that instance. So I would say that an Allen charge in response to credible allegations of refusal to deliberate is probably not appropriate. Okay. Can I ask some questions about the primary charge? We kept—we were very interested in that supplemental charge, so I'd like to turn for a minute to what I'm calling the RPC, the Rules of Professional Conduct aspect of the substantive charge. And so I'm sure you have something to say on that, but let me tell you what sort of my thought is, so hopefully you can answer it. As I thought about whether this particular use of the Rules of Professional Conduct charge was okay, because we know there are cases where it says it's okay, and in fact here, Mr. Avenatti, or I think it was him at that point, but his side said, yeah, this is fine if you just, you know, state the rule into the jury charge. They didn't sort of argue that this was completely off the table. So I was thinking through, is it the placement of the discussion that's problematic? Is it the length that's problematic? Is it the scope that's problematic, that it goes into a variety of rules? What is it about—because there are a lot of caveats where Judge Furman says, I'm not telling you this means he's guilty. What I'm telling you is this is something you can take into account. So I'm trying to focus on what is the aspect of this particular use of professional conduct rules in a charge that's problematic. Great questions, Your Honor. All great questions, and thanks for turning to this, because this really—this is another error in this case that really tipped the scale here. So yes, yes to many of your questions, Your Honor, yes to all of them. I would argue that the placement, or the length of the charge, yes, I mean sort of starting from the beginning, you know, as you look at this globally, the length of this professional wire fraud charge, number one, that in itself overwhelmed the wire fraud charge, which was the primary charge in this case and the one upon which the aggravated ID theft hinged upon. So yes to that. In addition, you know, I think the placement—the placement of the charge within the wire fraud instruction itself was sort of in the middle, but it was the judge's charge as to the misappropriation of client funds is a particularly serious violation of the duty of loyalty. That was very prominent within the professional duties instruction, and it is our contention that that aspect of the charge in and of itself has many problems with it that are not just about length or, you know, or placement, Your Honor. That aspect of the jury charge, the misappropriation is particularly serious, conveyed the judge's great weight upon what a judge, you know— Well, the full context is he says lawyers owe a duty of loyalty to their clients. This means that when acting on behalf of a client, a lawyer must put his client's interests first. The misappropriation of client funds is a particularly serious violation of a lawyer's ethical duty of loyalty. Under California law, it's the client who defines the objectives, and he goes on. But in context, isn't he just describing what the duty of loyalty is? It doesn't seem to suggest that he's concluded that there's been a misappropriation of client funds in this case. And I understand what you're saying here, Judge, but I think that the qualifier, the qualified language, particularly serious violation of a lawyer's ethical duty. I've been trying to rack my brains to imagine when a judge, you know, gives a descriptor as to, you know, conduct or as to, you know, as to something like this. And I really can't think of anything that's quite like this. You know, we gave a silly example in our brief, but, you know, you never say at a trial, you know, it is particularly serious to evade your taxes. I mean, that's basically what the judge is saying here. And, in fact, I think it invites the jurors to, in essence, like consider punishment in this case too, which is an improper consideration. Sorry, go ahead. No, but this is not mitigated by the fact that the judge is saying repeatedly, regardless of whether or not you find that he is, you know, even if you find that he's a violated professional conduct rule, that doesn't mean that he is guilty of this criminal offense. Yes, and that's a great question, Your Honor. I think the problem with that is that, you know, at a minimum, this does not cure. That particular, you know, curative instruction, if that's what you call it, does not speak directly to the harm I was just discussing, Your Honor, which is this conveyor of the charges or almost like distaste for the charges. A curative instruction like that does not talk to that. You know, a curative instruction like, for example, I have no opinion about this might speak to that, but the judge did not in this instance, Your Honor. And so I don't think that that cures that harm. You said something like I'm going to go over some of these professional rules of conduct and it's important that attorneys be ethical in their behavior or something to that effect. Would that be problematic? Well, I mean, it's not this case, Your Honor. I mean, I think there would be something to be said there, too. I think any time a judge adds a qualifier and extemporizes in many ways, you know, is really particularly problematic. You know, it's very easy for a judge to read the rules of professional conduct. And to get back to your point, Judge Merriam, you know, Mr. Avenatti, I just want to make clear, Mr. Avenatti objected from the beginning to any sort of mention of this. You know, given where he knew the case was, you know, any mention at all of professional duties. But given where the case was going, he suggested very reasonable compromises. And the compromise in this case was the duty of reasonable communication, client communication from the California ethical rules. It was directly from the rules, from the canons. There was no commentary. There was no gloss to that. And, you know, that was a very reasonable thing. And so to answer your point, Judge Lee. The rule about the treatment of client funds would still be relevant to Mr. Avenatti's defense, right? So if his defense is that he had a reasonable belief that he was owed the funds or could treat the funds this way, then explaining what lawyers generally know and the duties they have with respect to the treatment of client funds is relevant to that, isn't it? You mean in terms of like the commingling charges, Your Honor, or in terms of? The charges are that he engaged in a scheme to defraud. That was knowing. And so the government is saying, well, it's less likely that it's knowing if lawyers have all of these duties and know they have all these duties about how to treat client funds and his conduct wasn't consistent with that. Like that's relevant, right? Like it's not just about communication with clients. It's also about the treatment of client funds. Right. And Your Honor is actually really speaking to a big point of dispute between our side and the government here. You know, this is not just like a knowing mens rea. This is also, you know, a specific intent to defraud. And the government's contending that these charges, these ethical obligations and Mr. Avenatti's alleged breach of them is relevant to the intent to defraud, specific intent to defraud, which is an intent to harm. That is a very sort of high center requirement. And because these ethical codes, there's no, you know, if you look through all of Judge Furman's charge here, there is no single instance in which there's a mens rea ascribed to any of these. So this allowed in essence a Because it's all evidence about mens rea, right? It's like how could you have thought that treating the client funds this way was appropriate or you were entitled to these funds if in fact you're trained in all of these rules about how to treat client funds. But there was no evidence Sorry, go ahead. Yeah, I mean this was not like United States versus Skelos, Your Honor, about a defendant who was trained. I mean in that instance, the government put on proof that an expert came in and said that he had actually trained Skelos, you know, Senator Skelos, about these ethical rules. I'm sorry, but Mr. Avenatti's a lawyer who's licensed to practice law in California, right? That's right. He took the MPRE and he has CLE requirements and part of that is an ethics requirement, right? No, that's right. You're right. So he has been trained on these rules. That's right, Your Honor. But the government is not contending that his awareness of the rules is what the issue is here. The government in this charge say, you know, allow the jury to believe that his breach of these rules, his breach of these ethical rules, however negligent or mistaken, and we all know that many lawyers are negligent or mistaken. Part of me, Your Honor. You're saying that his breach of the rules, you know, would show his guilt on count one. That's right. Even though the district court repeatedly says, I'm cautioning you that just showing that he breached the ethics rules would not, should not lead you to determine that he's guilty even of the first two elements of count one. Well, the judge did allow the court, the jurors to consider it. He did not say, you know, said you may use this to determine he's not alone is what the judge said. But I would argue that because, you know, that the length of this charge within the context of the mail fraud, you know, I'm sorry, the wire fraud instruction and the sort of repeated emphasis and also in particular the, you know, the irrelevance, going back to your point as well, Your Honor, the irrelevance of many of these to the issue at trial. You know, it's important to say here that this, these instructions, this duty, these professional duties instructions that actually came from Judge Gardefee. Judge Gardefee developed them for the Nike trial, which was an honest services fraud case. And so, you know, many of the ethics codes that are in this really don't have any bearing upon this trial here, Your Honor. Like the duty to, you know, implied authorization, scope of authority. You know, that was really stuff that was at issue at Nike. That was not at issue here. And just because they were relevant does not mean that they were not prejudicial. I mean, the jury had before it, you know, two weeks of. Well, I mean, you know, it says a lawyer may not take over decision making for a client unless the client has authorized the lawyer to do so. And there are, there was evidence that Mr. Abinanti was making decisions for his client that were not authorized, right? But that's not what the. And so if his defense is that he's acting reasonably, isn't it relevant that he's been trained to know that he can't take unauthorized action on behalf of the client? I mean, even if, I mean, even if this, even if, you know, one or two of these were relevant, Your Honor, not all of it was. And that's the real problem here. And. Can I just have one more question about the. Sure. You say misappropriation of client funds is a particularly serious violation. And you think particularly serious was kind of editorializing. So if it had just said the misappropriation of client funds violates the lawyer's ethical duty of loyalty, that would have been okay. I think, I think this charge should not have been given in general, Your Honor. And so I'd still be complaining about it. But I think the particularly serious gloss adds a dimension to this error that is not found in other cases. Because it adds a kind of judgment by the district court. That's right. And this really brings. Although, I mean, you know, when lawyers do get trained in all their ethical duties, you often do spend a lot of time on the treatment of a client's funds. Judge, I took the bar too, I know. So it does seem like we do treat the misappropriation of client funds as a particularly serious violation of a lawyer's ethical duty of loyalty, don't we? That's right, Your Honor. But that, the judge should not be saying this in a case about which, you know, the defendant is being charged with misappropriating client funds. He should not be saying that to the jury. I mean, I think, I just think that's one step too far in this particular case. You know, it's almost difficult to find cases that are analogous to this where a judge really conveys an opinion during the midst of a charge. I'd really cast a wide net, I think, as the court sort of saw from the briefing. Well, I guess I'm suggesting that it's not an opinion because, in fact, the ethical rules do treat it as a particularly serious violation. And I don't think that a jury should be speculating or should have any cause to, you know, to think about whether it's particularly serious. The judge thinks about that at sentencing, which Judge Furman did here, you know. And so, so, you know. I think we have that argument. Okay. If there are any more questions, we've kept you for a long time, but you still have time for rebuttals, so we'll hear from you again. Thank you, Your Honor, very much. For your testimony to the government, Mr. Podolsky. Thank you. May it please the court. My name is Matthew Podolsky, and I represent the United States in this appeal, as I did at trial. I thought maybe I'd just pick up where we left off. But let me just say by way of introduction, the judgment of conviction should be affirmed in this case, as should the order of restitution. But I'd like to just pick up right where counsel left off with respect to the professional, the duties of professional responsibility. And maybe where to start, actually, because I take this to be really the focus of counsel's argument, to focus on this description of the violation as particularly serious. And the argument has been made in the reply just now that judges would never comment on a crime as being serious, and that would never be countenanced by this court in instructions. And that struck me as curious. So I took a look at Sand's modern federal jury instructions, which, frankly, are not the instructions the government is often up here touting. But I note that in instruction 2-5, so this is really among the introductory instructions proposed by Sand, it reads, the case is important to the government for the enforcement of criminal laws, is a matter of prime concern to the community. Equally, it is important to the defendant, who is charged with a serious crime. And, in fact, in the model, Sand's model instructions for wire fraud, which was the charge in this case, there's a citation to the Eighth Circuit's approved wire and mail fraud instructions, which read that the crime charged in this case is a serious crime, which requires proof of specific intent before the defendant can be convicted. But is that really what the issue is, whether or not this particular charged offense is serious? It's not really, I think, what the argument is. I think the argument is to the extent that we're bringing in something, you know, for instance, if this were a case where we're bringing in uncharged crimes evidence and there were some prior offense of the defendant that you were bringing in that you argued was relevant to intent in some way, it would be if the court said, by the way, if the person were guilty of that offense, that would be a felony, you know, versus saying that it's a misdemeanor. The seriousness in that context, if it's not related to why it's being admitted, I think that's the argument for why it's problematic. I appreciate the question, Your Honor, because I absolutely agree. And I want to be clear. My point here is that judges do comment on or say from time to time in instructions that crimes are serious. But I agree. The more salient point here is the use or the discussion of the professional duties. And on that point, the statement that misappropriation is a particularly serious breach of a lawyer's duties was directly relevant. I actually think, Judge Manasci, you got at this. Lawyers are trained that this is a particularly serious violation of your duties. And, in fact, that statement was a line from McKnight, a California Supreme Court case, which cites several other cases. I think actually the quote in that case is something like, we have long said this. And the reason it is relevant to make that point is that this is all the main point here is this is about the defendant's mens rea. And so the jury can infer from the fact that lawyers, it is emphasized to lawyers, that is a particularly serious crime to misappropriate funds. And then the facts show that the defendant was not careful at a minimum, that he was not honest. The reason why the district court is talking about the ethical duties is because of the mens rea question. But he does go on and on about the ethical duties. And if you're giving the jurors a lecture about the ethical duties of lawyers, and then you tell them the misappropriation of client funds is a particularly serious violation of a lawyer's ethical duty of loyalty, and they've just heard all of this evidence about misappropriation of client funds, I mean, why isn't that the judge basically telling the jury, like, he really did something unethical here? So I think I'll try to take what I take as really sort of two points. One is the length, generally, and then the context of that particular statement. And actually, I think, Judge, one of your questions to opposing counsel really put that statement in context. It was a description of the way California views a particular duty, the duty of loyalty. And I think the wording of this instruction is really quite important. Unlike Stein, which is cited in the appellant's brief, in Stein, the court said something like, there's been evidence tending to show that there was a violation of X, Y, and Z. And Judge Furman was incredibly careful and precise in the way that he instructed the jury. He did not opine on the evidence at all, and was actually just quite careful to give a description of what the law in California is with respect to a juror's duty, excuse me, a lawyer's duty. Now, with respect to the length, I mean, we can quibble about whether four pages or whatever seems long or short in the context of this charge, but I think the point is that a charge has to be accurate. And I'm not aware of any case that says an accurate charge, a charge that gives the jury everything that they need in order to assess the evidence, is still error because it was lengthy. No, but that's not the argument here. The argument is you've got, and I think it's closer to seven pages, about something that is contested whether it was appropriate at all. But it does become, you've got, there's three elements to wire fraud. You know, here's the first two elements. I'm not even going to get to interstate commerce, the use of the wires, until I stop and give you, I can't remember how long it takes to read a page, but seven pages worth of charge on this issue. I'm going to couch it in don't take this too seriously, don't make this, this is not the end all and be all, but it's not just the length of the charge in total. It is that relative to the rest of the wire fraud charge, and I can't read the pages because they're too tiny, because they're two or four to a page, but it's almost as much as the whole first and second elements. Thank you, Erin. I just want to be very clear about what I'm trying to say about the length, but first let me just note, and I'm not going to remember exactly how many lines each charge is, but this charge is, but I believe in those seven pages, several of the pages, if I'm remembering correctly, are actually about lawyers' fees, and those were actually instructions that were given so that Mr. Avenatti could make his defense that he was really seeking a reasonable fee or at least had a good faith belief that he could take the money as a reasonable fee. So I think it's actually a little bit smaller, the instructions that the defendant or the appellant is really challenging, and I think the point I really want to drive at in terms of the length is if you have a charge that is accurate, and I don't see any argument, true argument, that the charge on the duties weren't accurate, and I can talk for a moment or in a moment about the relevance of each part of the charge, but if you have a charge that is accurate, it's clear, and each part is relevant to the jury's deliberation. The length by itself is not an error. It doesn't make the instructions false, and so we wouldn't say it's an abuse of discretion just to have a lengthy charge, but I take the argument is that if you are getting a pretty lengthy speech about lawyers' duties and a statement about what a particularly serious violation of those duties is and that that is relevant to the first count, that that is inviting the jury to make a decision on count one on the basis of whether Avenatti violated his ethical duties. So that's the idea, and the length is not by itself dispositive, but the fact that the judge is spending so much time on these ethical duties and then tells you what a serious breach of them is might be telling the jury if you think that he breached these duties, then he's pretty much guilty. So I think two responses to that. The first is I think setting it up that way puts a trial judge in a really impossible situation because the judge needs to give a complete and accurate charge. So let's just talk in the sort of general here. You've got one part of the charge, the wire fraud charge, just happens to be shorter to be complete. To be complete on the other part of the charge, it has to be longer, and I think it would be really— Is that really in this context? Because we're not talking about a case where I agree there are things that the judge has to communicate, and when you're talking about the general instructions or the elements of the offense, however long it takes to explain that is however long it takes. But when you're talking about something additional that's being added in that's not part of the standard charge, that it is relevant but it's not sort of the core of the charge, I don't know that I think it's necessary that this part on this instruction on the duties, he had to be super thorough and say everything that needed to be said about it. I don't know that in that context you can say, well, no. I don't think that particular focus on it puts the judges in a bad position because this is an additional instruction, I guess. Well, understood, Your Honor. Nonetheless, having made a finding that I think was certainly not clear that these instructions were relevant, having precluded the government from offering an expert to explain them at the defendant's motion, it's, again, I think does put a trial judge in a somewhat difficult position to say, but you've got to find a way to make them shorter and less, even if to the point of being incomplete. And really what I, the second point I wanted to drive at, which I think is really the answer here is, even if they were lengthy, even if the length invited, could invite, could be seen to invite some risk like that, the judge's instructions were actually very clear. They were bookended by explaining at length the way to use these instructions, what the jury could use them for properly, the limits to that. And, of course, in the context of a full charge, where the judge is giving the jury very clear instructions about what the burden of proof is, what the elements are that the government must prove beyond a reasonable doubt. I think we presume that the jury who hear this instruction, see the instruction, follow it. He says multiple times, just you can't say that he's guilty because of a breach of the ethical duties. Exactly. Both at the beginning and then at the end in an even stronger language. And, in fact, I believe, if I recall correctly, he originally was going to give one sort of warning along those lines in response to the defendant's concerns during the charged colloquy, he added a second. And so I think those really are the point here. I will just note very quickly on this. Each part of the instruction was relevant. I just want to throw out an example because I think it was during the colloquy with appellant's counsel, there was a discussion about whether implied authorization, discussion about that was relevant or not. But actually it was the defendant's defense to the identity theft charge that he was impliedly authorized to use his client's signature. So I just point out, I think actually Judge Furman was quite careful and thoughtful about what he included. It was not actually the same or just a lift from Judge Garvathy's instructions. There were significant portions he removed from what Judge Grafis used? I didn't think there were. To be honest, Your Honor, and maybe I should have done this in advance, I haven't done a red line. I don't recall exactly what he did, but he certainly crafted his own version and also made edits in response to the party's objections and discussions during the charge conference. And so I think he was actually quite careful about what duties he included in that charge. Okay, well we spent the most time talking to opposing counsel about the Allen charge question. So if the jury is picking on one holdout, shouldn't the district court have declared a mistrial? So the answer is no, Your Honor. And maybe we can put aside for a moment the allegations about failure to deliberate or refusal to deliberate and just focus on this case as a typical case where there is more than one note that the jury is failing to reach a consensus in a relatively short amount of deliberation time. The original note came out quite quickly. It was actually the defendant who requested an Allen charge at that point, the first Allen charge. Judge Furman, I think the record shows, was inclined just to say, you haven't been going very long. That's it. The defendant requested a modified Allen charge. It was given, a second modified Allen charge was given in response to the note that we've been focused on. The reason I want to put aside the juror misconduct or deliberation issues for a moment is this court has repeatedly, repeatedly affirmed in exactly these contexts the use of a second modified Allen charge. All of the factors that this court focused on, Judge Furman very carefully went through. He included the cautionary language about not giving up your consciously held beliefs. In fact, in the first modified Allen charge, he said it's your right not to reach a verdict, and he referred back to that instruction and gave a written version of it when he gave the second modified Allen charge. Now, I think a point that Appellant has made is that, well, because the note expressing a continued deadlock that generated the second modified Allen charge referenced a juror's sympathy. Therefore, a follow-up note was improper. You must declare a mistrial. And the case I would just offer up on this is United States v. Pirro, which was cited in the Appellant's brief. It's at 9 Federal Appendix 45. It is a summary order. But in that case, there was a note came out from the jury saying one juror won't abide by your honor's legal instructions, keeps focusing on how this could be a civil case, not a criminal case, something to that effect. And the modified Allen charge that Judge Parker gave, like in this case, said specifically, you must follow the law as I give it to you. It responded directly to the note in a similar way that Judge Furman's response referenced sympathy but gave a typical modified Allen charge with all of the standard precautions. Isn't that a bit different, though, from an instruction that says if a juror is not deliberating properly, let me know? I mean, that seems a little more pointed than I understand what I think is your argument. Even if the note from the jury kind of singles someone out, a response to that note does not necessarily mean that it's improper or that it's coercing that juror. So I take that point. But here, where you do have this sort of feel of like the judge suggesting, hey, if someone's not doing what they're supposed to, you can let me know, it feels a little different. Well, so I think two responses to that, Your Honor. The first is I don't think so. And the reason I don't think so is the offer that you can come back with another note didn't say if one juror isn't agreeing or if this juror isn't doing anything or if you don't like their response, come back and complain. What it actually just said is if any juror is refusing to deliberate in the manner that the instructions require, you're allowed to write another note. And I don't think that singles out a juror, certainly not in a way that's coercive. Well, the opposing counsel makes the point that there was one juror who was holding out, apparently, and that juror knows that the other juror sent this note to the judge, and the judge then gave a speech about you've got to focus on the evidence and you can't be a holdout. And he says if anybody's not focusing on the evidence, let me know. So in all of that context, wouldn't that juror understand that he or she is being pressured by the court? I think the juror would understand exactly what the court said, which is you do have to deliberate. If you don't deliberate, if you don't look at the evidence, there may be another note. What the instruction absolutely did not say is that you must agree with the other jurors. You must change your mind. And, in fact, it was very careful to say you should not abandon your consciously held belief just because you're outnumbered or others disagree with you. I guess you might say it's also not different from a regular Allen charge. I guess a regular Allen charge does single out the minority position. I mean, there might be one or two holdouts, and we've said that you can say you should consider whether you're wrong and the majority is right as long as we give the cautionary thing. That's absolutely true, Your Honor, but I do want to emphasize that Judge Furman was very careful not to say that one side or the other should be the one to give up their views or write it up. Right, so this is less than the regular Allen charge. A regular Allen charge says if you're in the minority, you might consider whether the majority is right. But if you have an honest conviction, you shouldn't give it up. Here, Judge Furman says everybody should be open-minded and shouldn't be stubborn if the evidence suggests that their initial position might be wrong. That's absolutely right. And, look, I'm not blind to reality when you have 11 to 1, and the most likely outcome in the real world is the one person is going to hear the arguments of 11. Do we actually know that it's 11 to 1? I mean, the note says we have one juror who's refusing to look at evidence. It doesn't necessarily mean there aren't other jurors who might be on that side but are looking at evidence. I mean, I guess we don't know for sure. That's true, Your Honor. I think everybody's been assuming that it's 11 to 1. I think everyone's making a common-sense judgment here, but it's absolutely right. Actually, the jury was pretty scrupulous in obeying the instruction not to reveal the positions of jurors. They don't say it's 11 to 1, and they also don't say it's 11 to 1 in either direction, a point that Judge Furman made on the record when considering how to respond to this note. I'll just pivot slightly on this point, though, Judge Lita, you made about the question or the offer to send another note if a juror isn't deliberating. And here I will turn just for a moment to the allegation that the jury made that this juror wasn't deliberating in conformity with the judge's instructions, wasn't looking at evidence, and please help. And what this court has said, I'll cite the Baker on this very clearly, is it's within the sound discretion of the district court how to respond to a situation like that, whether to conduct an inquiry, what the steps are, ultimately whether to dismiss a juror, although it didn't get to that stage at all. And it certainly was within the discretion of Judge Furman to say to the jury, if there is a failure to deliberate, you can send a note. I mean, that is far, far less intrusive or coercive than conducting an inquiry and ultimately dismissing a juror. As Pelham's counsel referenced, I know it was far less aggressive because I asked to do an inquiry, and the judge said no. And I have to say, Judge Furman was correct on that. He made a judgment that in his discretion we could start by telling the jury to deliberate, and they did. And I'll just, I think something that throws into relief the discretion exercised by Judge Furman, there was a case cited in Pelham's reply, Litwin, out of the Ninth Circuit. And in that case, the judge got a note indicating that the juror had refused to consider other positions from the beginning, and the judge immediately or nearly immediately conducted an inquiry. And it's a little equivocal whether the juror was just believed in their position or not. The judge dismissed the juror. And what the Ninth Circuit said, among other things, is one reason this was an abuse of discretion is the court should have considered a note, should have told the jury to deliberate at that point. And I just, I think that throws into relief that that's exactly what Judge Furman did. He didn't dismiss a juror. He didn't coerce anyone. He simply said, here's how to deliberate, and you should try. And after, I think it was about three hours, I don't know what happened during the lunch break, maybe they didn't deliberate for that hour, a verdict was returned. Well, they get the instruction at 1155, and then they return a verdict at 233. That's right. So if it's true that they're not deliberating over lunch, then it's an hour and a half. An hour and a half. That might be right. I will say it's not, they could have come back in five minutes if this was an instance of coercion. But I think certainly in all the circumstances here, this was a sound discretion of the district court. And it should be affirmed. Okay, thank you very much. Mr. Hidalski will turn back to Ms. Hutchinson on rebuttal. Thank you, Your Honor. I'll be brief because we've kept Your Honors here for quite a while, so thank you for that kindness. As for the professional duty charge, the professional duties charge, the government says that the court had an obligation to give an accurate charge. Now, that's right. Having decided that the judge was going to charge on the professional duties, that it was somehow relevant, notwithstanding the fact that Mr. Avenatti objected to it, what he proposed was accurate. What he proposed was a simple reading of the rules of professional conduct with no editorializing, with no extemporizing, with no other comment, no case law gloss, just clean and clear, and it would obviate the problems that we're discussing here, quite frankly, Your Honor. And my friend is absolutely right. Judge Ferman did dabble in this instruction quite a bit. And you're right, he took suggestions from the parties. Mr. Avenatti had many fallbacks, just really, really fought this quite a bit. But doesn't that show that perhaps just sticking to the ethical duty itself, just the canon like Mr. Avenatti proposed? But some of your argument has just been that it's lengthy and so on, that it's inaccurate. So just to be precise about what you think is inaccurate, it's what you think is editorializing by characterizing something as particularly serious? Is that what's inaccurate? I understand that it's lengthy. I get that. But now you're talking about accuracy versus inaccuracy. So is there something more than the sentence you identified about particularly serious that you think is an inaccurate statement of what the lawyer's duties are? Well, that's not what we're claiming in this case, Your Honor. You're right. I mean, that's the one that we're really ‑‑ and I guess we're not even necessarily calling it inaccurate so much as just prejudicial into the extent that it's conveying the judge's opinion. And I think what really the issue here is, judges, this came up a lot during my friend's presentation here, is that this charge took over the entire wire fraud charge. It was just so long and lengthy. I see my time is up, and so I'm going to move into the Allen charge really, really quickly. So my adversary says that there's really no problem in this case with asking jurors to, you know, in essence, rat out their fellow juror. And I just ‑‑ you know, this court has cautioned that in instances like this, really sensitive times, and I would urge the court, even though this is not a misconduct case, I would urge the court to read Baker and Thomas, that suite of cases, because they really discuss the duty to deliberate. This court has really, really, really looked at, you know, this needs to be a sensitive inquiry, and, like, directing jurors to send out a note that says, Juror 8 isn't, you know, deliberating, in this case, high profile reporters, you know, big pressure in this case, you know, big, big, it just is not sensitive. And so that's not an appropriate response here. And ‑‑ Just in fairness to Judge Furman, I mean, he wasn't saying, like, you should go rat out the other juror. I mean, the government had asked for an inquiry of all the jurors. He decided to do something less intrusive. Wasn't it appropriate for him to say, let me know if you still have a problem after getting this instruction, and then maybe I'll consider whether I need to do something else. You know, I think Judge Furman was right. You know, I think we're both in agreement at this point. Judge Furman was right to keep going, to see what was happening here. But this instruction, in this context where they're complaining about her, is the second charge. This is an unusual case. There's no facts quite like it.  this was coercive. Thank you, Your Honor. Okay. Thank you very much, Ms. Hutchinson. The case is submitted. And because that is our only argued case on the calendar this morning, we are adjourned.